LINDA WENDELL HSU (SBN 162971)
lhsu@selmanlaw.com
SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile: 415.979.2099

KRISTINA FRETWELL (SBN 297624)
kfretwell@selmanlaw.com
101 W. Broadway, Suite 1330
San Diego, CA 92101
Telephone: 619.564.3600
Facsimile: 619.564.3636

Attorneys for Plaintiff SCOTTSDALE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>JS UNION, LLC; SHAHIN YAZDI; LOCALI MANAGEMENT GROUP, LLC; CASHIO PROPERTIES; and DOES 1 through 50,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT |

COMES NOW, Plaintiff Scottsdale Insurance Company ("Scottsdale") and alleges as follows:

### THE PARTIES

1. Plaintiff Scottsdale is, and at all times relevant was, a corporation organized and existing by virtue of the laws of the State of Ohio, with its principal place of business in Scottsdale, Arizona, and is authorized to transact business as a surplus lines insurer in California.

1

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT

2.      Scottsdale is informed and believes, and based thereon alleges, that Defendant JS Union, LLC ("JS Union") is, and at all times relevant was, a limited liability company organized under the laws of the State of California, with its principle place of business in Beverly Hills, California.

3.      Scottsdale is informed and believes, and based thereon alleges, that Defendant Shahin Yazdi ("Yazdi") is, and at all times relevant was, an individual residing in Los Angeles, California, and that Yadzi is, and at all times relevant was, the principal of Defendant JS Union.

4.      Scottsdale is informed and believes, and based thereon alleges, that Defendant Locali Management Group, LLC ("Locali") is, and at all times relevant was, a limited liability company organized under the laws of the State of California, with its principle place of business in Irvine, California.

5.      Scottsdale is informed and believes, and based thereon alleges, that Defendant Cashio Properties ("Cashio") is, and at all times relevant was, a legal entity form unknown, used by Defendant Yazdi to manage residential rental property in Los Angeles, California.

6.      Defendants DOES 1 through 50, inclusive, are sued herein by such fictitious names because Scottsdale is unaware of the true names and capacities of said DOE defendants. Scottsdale will amend this Complaint to reflect the true names when the same are ascertained. Scottsdale is informed and believes and thereon alleges that said DOE defendants are responsible for the acts, events, and circumstances alleged herein, or are interested parties to this action.

7.      Scottsdale is informed and believes, and thereon alleges that Defendants are, and at all times relevant hereto were, making claims for insurance coverage against policy numbers CPS1128598, CPS1329751, CPS1894721, CPS2103684, CPS2327015, CPS2633319, and CPS3027404 issued by Scottsdale to JS Union.

## JURISDICTION

8.      This Court has jurisdiction over the subject matter of this action pursuant to

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT

380 44811 4817-9682-1191 .v4

28 USC § 2201 because an actual controversy exists within the Court's jurisdiction that merits relief.

9. The Court also has jurisdiction pursuant to 28 USC § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendants, and each of them, as they have purposely availed themselves of the privilege of conducting activities within California. Further, the underlying actions at issue arose out of Defendants' activities in California. Thus, it is reasonable for Defendants to be subject to jurisdiction in California.

## VENUE

11. Venue is proper in this judicial district pursuant to 28 USC § 1391 because the underlying actions for which Defendants sought coverage were pending in the Superior Court of California, County of Los Angeles. As such, a substantial part of the events or omissions giving rise to these claims occurred here. Specifically, the underlying actions and claims giving rise to them occurred in Los Angeles, California. Venue is also proper in this judicial district pursuant to 28 USC § 1391 because the Defendants, and each of them, are either businesses authorized to conduct business in California, or are individuals residing in California, and are thus subject to personal jurisdiction here. Venue is therefore proper pursuant to 28 USC § 1391(b) and 28 USC § 1391(c).

## THE SCOTTSDALE POLICIES

12. Scottsdale issued the following Commercial General Liability ("CGL") policies to Defendant JS Union as the named insured:

- CPS1128598, effective February 22, 2010 to February 22, 2011;
- CPS1329751, effective February 22, 2011 to February 22, 2012;
- CPS1894721, effective February 22, 2014 to February 22, 2015;
- CPS2103684, effective February 22, 2015 to February 22, 2016;
- CPS2327015, effective February 22, 2016 to February 22, 2017;

- CPS2633319, effective February 22, 2017 to February 22, 2018; and
- CPS3027404, effective February 22, 2018 to March 14, 2018.

(collectively the "Scottsdale Policies"). Copies of the Scottsdale Policies are attached as Exhibits 1-7.

13. The Scottsdale Policies provide coverage for "bodily injury" and "property damage" (Coverage A), as well as "personal and advertising injury liability" (Coverage B) under standard Insurance Services Office ("ISO") Form CG 00 01.[1] The Scottsdale Policies include multiple provisions that are relevant to this action, including, but not limited to the following:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply[.]

   . . .

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which

---

[1] There are no material differences between the 04-13 and 12-07 editions of the CGL Coverage forms as applied to the facts in the underlying claims. Consequently, Scottsdale cites only the 04-13 edition in this Complaint.

this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply[.]

. . .

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

. . .

    a. A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

. . .

2. Each of the following is also an insured:

. . .

    a. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager[.]

    14.    The Scottsdale Policies also include several exclusions and endorsements that modify coverage.  Specifically, the Scottsdale Policies include UTS-74G (8-95), Punitive or Exemplary Damage Exclusion that provides as follows:

UTS-74G (8-95)

PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

This policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

15. The Scottsdale Policies also include Form No. UTS-267g (5-98), Lead Contamination Exclusion, that provides, in relevant part:

UTS-267g (5-98)

LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1. Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

### THE LANDMARK AND NORTHFIELD POLICIES

16. Landmark American Insurance Company ("Landmark") issued CGL Policy No. LBA155169 to JS Union for the policy period February 22, 2012 to February 22, 2013. The Landmark policy provided coverage for "bodily injury" and "property damage" (Coverage A), as well as "personal and advertising injury liability" (Coverage B) under standard ISO Form CG 00 01 10 01.

17. Northfield Insurance Company ("Northfield") issued CGL Policy No. WS163732 to JS Union for the policy period February 22, 2013 to February 22, 2014. The Northfield policy provided coverage for "bodily injury" and "property damage" (Coverage

6

A), as well as "personal and advertising injury liability") (Coverage B) under ISO Form CG 00 01 12 07.

## THE UNDERLYING LAWSUITS

### The *Perez* Action

18. On or about October 25, 2017, the Perez family filed a lawsuit against Defendants in the Los Angeles County Superior Court, entitled *Artemio Perez, et al. v. JS Union, LLC, et al.*, Case No. BC681094 (the "*Perez* Action"). A copy of the complaint in the *Perez* Action is attached hereto as Exhibit 8.

19. The *Perez* plaintiffs allege that they were tenants at the residential rental property located at 508 S. Union in Los Angles California (the "Subject Premises") from February 2001 until they were forced to vacate, in or around 2017.

20. The *Perez* complaint alleges that JS Union purchased the Subject Premises in 2010, and that Locali and Cashio managed the property on JS Union's behalf.

21. The *Perez* plaintiffs claimed that they endured a multitude of habitability conditions during their tenancy, including broken windows and doors, crumbling walls and ceilings, leaking plumbing and fixtures, lack of heat, exposed active wiring and outlets, inadequate garbage and rubbish receptacles causing unsanitary conditions, infestation of bed bugs, rodents and vermin, and holes in the walls, ceilings and floors of their unit.

22. The *Perez* plaintiffs also alleged that the property contained high levels of lead and traces of toxic mold spores.

23. The *Perez* complaint further claimed that exposure to high levels of lead during pregnancy allegedly caused one of the minor plaintiffs to suffer from a brain development disorder and other related health issues.

24. The *Perez* Action alleged causes of action for (1) Breach of Lease Agreement; (2) Tortious Breach of Implied Warranty of Habitability; (3) Statutory Breach of Warranty of Habitability; (4) Negligence; (5) Premises Liability; (6) Violation of Los Angeles Municipal Code § 1501.4 and Cal. Civ. Code § 1947.11; (7) Nuisance; (8) Collection of Rent

on Substandard Dwelling; (9) Constructive Eviction; (10) Breach of the Covenant of Quiet Enjoyment; (11) Intentional Infliction of Emotional Distress; and (12) Violation of Business and Professions Code § 17200, et seq.

25. The *Perez* plaintiffs sought general damages, special damages, punitive and exemplary damages, statutory trebled damages, and attorneys' fees and costs.

### Defense and Settlement of the *Perez* Action

26. Scottsdale, Landmark and Northfield all agreed to defend Defendants against the *Perez* Action under a reservation of rights. A copy of Scottsdale's reservation of rights letter is attached hereto as Exhibit 9.

27. On August 5, 2019, Scottsdale notified its insureds' coverage counsel that there was a tentative agreement with the *Perez* plaintiffs to settle the claims against Defendants for $1,750,000. However, there was an ongoing discussion about how the amount would be allocated between each of the plaintiffs and their claims for attorneys' fees, and/or treble damages.

28. On or about August 28, 2019, the insurers tentatively agreed to settle the *Perez* Action on behalf of Defendants. The total settlement of $1,7500,000 was to be allocated as $600,000 for plaintiffs' attorneys' fees as allowed by statute; $180,000 in damages for all plaintiffs except for the minor plaintiff with the lead claim, including treble damages under Civil Code § 1941, and $970,000 for the minor plaintiff's lead poisoning claim. The settlement was to be funded on September 30, 2019, pending resolution of a dispute amongst the insurers regarding allocation of the attorney fee portion of the settlement. A true and correct copy of the *Perez* settlement agreement is attached hereto as Exhibit 10.

29. On September 12, 2019, prior to the time the settlement was to be funded by the carriers, Scottsdale notified its insureds' coverage counsel that it intended to settle the *Perez* Action and offered to allow the insureds to take over their own defense if they disagreed with settling the action, pursuant to *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001). The insureds did not respond to that offer. A true and correct copy of

8
COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT

Scottsdale's September 12, 2019 correspondence is attached hereto as Exhibit 11.

30. Scottsdale's total agreed upon share of the *Perez* settlement, based on its time on the risk, was $877,450, allocated as $33,840 in damages for all plaintiffs except for the minor plaintiff with the lead claim, $103,500 treble damages and $740,110 lead poisoning for the minor plaintiff.

### The *Cabrera* Action

31. On or about March 14, 2018, current and former tenants of the Subject Property filed suit against JS Union in the Los Angeles County Superior Court entitled *Hilda Cabrera, et al. v. JS Union, LLC, et al.*, Case No. BC698235 (the "*Cabrera* Action"). (The *Perez* and *Cabrera* Actions are collectively referred to as the "Underlying Actions.") A true and correct copy of the complaint in the *Cabrera* Action is attached hereto as Exhibit 12.

32. The *Cabrera* plaintiffs alleged that during their tenancies, they endured a multitude of habitability conditions, including broken or inoperable garbage disposals, electrical and plumbing deficiencies, lack of hot water, water leaks resulting in damage to ceilings and floors, walls containing mold and mildew, rodent, insect and pest infestations, and security and safety deficiencies.

33. The *Cabrera* complaint alleged causes of action for (1) Breach of Warranty of Habitability; (2) Breach of Statutory Warranty of Habitability; (3) Breach of Covenant of Quiet Enjoyment; (4) Negligence; (5) Violation of Civil Code § 1942.4; and (6) Private Nuisance.

34. The *Cabrera* plaintiffs sought general damages, special damages, statutory treble damages, and attorneys' fees and costs.

### Defense and Settlement of the *Cabrera* Action

35. Scottsdale, Landmark and Northfield all agreed to defend JS Union against the *Cabrera* Action under a reservation of rights. A copy of Scottsdale's reservation of rights letter is attached hereto as Exhibit 13.

36. On or about March 25, 2019, Scottsdale notified its insured's coverage counsel

that it intended to settle the *Cabrera* Action and offered to allow the insured to take over its own defense if it disagreed with settling the action, pursuant to *Blue Ridge Ins. Co.*, 25 Cal.4th 489. The insured did not respond to that offer. A true and correct copy of Scottsdale's March 25, 2019 correspondence is attached hereto as Exhibit 14.

37. On or about March 26, 2019, the insurers agreed to settle the *Cabrera* Action on behalf of JS Union for $510,000.

38. Scottsdale's total agreed upon share of the *Cabrera* settlement, based on its time on the risk, was $421,617. Of this amount $105,404 was for plaintiffs' damages and $316,213 was for uncovered trebled damages.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – No Duty to Indemnify for Trebled Damages)

### (Against All Defendants)

39. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

40. Scottsdale contends that it had no duty under the Scottsdale Policies to indemnify Defendants for trebled damages which the *Perez* and *Cabrera* plaintiffs sought pursuant to California Civil Code §§ 1941 and 1942.4 and Los Angeles Municipal Code § 151.10, in the Underlying Actions, and for which Scottsdale paid $419,713 to settle. In particular, Scottsdale contends that coverage is barred by the Punitive or Exemplary Damage Exclusion, cited above.

41. Scottsdale is informed and believes, and based thereon alleges, that Defendants contend that Scottsdale had a duty to indemnify them in the Underlying Actions under the Scottsdale Policies for the trebled damages which the *Perez* and *Cabrera* plaintiffs sought pursuant to California Civil Code §§ 1941 and 1942.2, and Los Angeles Municipal Code § 151.1, in the Underlying Actions.

42. An actual controversy exists between Scottsdale and Defendants which requires a judicial declaration to determine the respective rights and obligations of the parties

under the Scottsdale Policies.

43. Scottsdale has no plain, speedy or adequate remedy at law. A judicial declaration and a declaration of the parties' respective rights and duties under the Scottsdale Policies is necessary and appropriate at this time so that the parties may resolve this dispute.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief – No Duty to Indemnify – Lead Contamination Exclusion)

### (Against All Defendants)

44. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

45. Scottsdale contends that it had no duty to indemnify Defendants in the *Perez* Action under the Scottsdale Policies, as a matter of law, for any damages sought by the *Perez* plaintiffs for bodily injury arising out of the ingestion, inhalation or absorption of lead in any form, and for which Scottsdale paid $740,110 to settle. In particular, Scottsdale contends that coverage is barred by the Lead Contamination Exclusion, cited above.

46. Scottsdale is informed and believes, and based thereon alleges, that Defendants contend that Scottsdale had a duty to indemnify Defendants in the *Perez* Action despite the existence of the Lead Contamination Exclusion in the Scottsdale Policies.

47. An actual controversy exists between Scottsdale and Defendants which requires a judicial declaration to determine the respective rights and obligations of the parties under the Scottsdale Policies.

48. Scottsdale has no plain, speedy or adequate remedy at law. A judicial determination and a declaration of the parties' respective rights and duties under the Scottsdale Policies is necessary and appropriate at this time so that the parties may resolve this dispute.

## THIRD CLAIM FOR RELIEF

### (Reimbursement of Defense Expenses – *Perez* Action)

### (Against All Defendants)

11

49. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

50. Scottsdale defended Defendants in the *Perez* Action pursuant to a full and complete reservation of rights, including, but not limited to, the right to recover from them defense expenses incurred by Scottsdale for the defense of non-covered claims asserted against them in the *Perez* Action, pursuant to the California Supreme Court decision in *Buss v. Superior Court*, 16 Cal.4th 35 (1997).

51. Because some of the claims asserted against Defendants in the *Perez* Action were not covered under the Scottsdale Policies, and because Scottsdale had no obligation to provide them with a defense as to those claims, Scottsdale has been damaged in the amount of the attorney fees and costs it had incurred in the *Perez* Action for the defense of uncovered claims.

52. Accordingly, Scottsdale is entitled to reimbursement, restitution and recovery from Defendants for those defense expenses in an amount to be proven at the time of trial.

## FOURTH CLAIM FOR RELIEF

### (Reimbursement of Indemnity Payments – *Perez* Action)

### (Against All Defendants)

53. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

54. Scottsdale defended Defendants in the *Perez* Action pursuant to a full and complete reservation of rights, including, but not limited to, the right to recover from them indemnity payments made by Scottsdale for non-covered claims asserted against them in the *Perez* Action, pursuant to the California Supreme Court decision in *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005).

55. Because some of the claims asserted against Defendants in the *Perez* Action were not covered under the Scottsdale Policies, and because Scottsdale has no obligation to indemnify them for these claims, Scottsdale has been damaged in the amount of the

indemnity payments totaling $843,115 in the *Perez* Action for uncovered claims.

56. Accordingly, Scottsdale is entitled to reimbursement, restitution and recovery from Defendants for these indemnity expenses.

## FIFTH CLAIM FOR RELIEF

(Reimbursement of Defense Expenses – *Cabrera* Action)

(Against JS Union)

57. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

58. Scottsdale defended Defendants in the *Cabrera* Action pursuant to a full and complete reservation of rights, including, but not limited to, the right to recover from them defense expenses incurred by Scottsdale for the defense of non-covered claims asserted against them in the *Perez* Action, pursuant to the California Supreme Court decision in *Buss*, 16 Cal.4th 35.

59. Because some of the claims asserted against Defendants in the *Cabrera* Action were not covered under the Scottsdale Policies, and because Scottsdale had no obligation to provide them with a defense as to those claims, Scottsdale has been damaged in the amount of the attorney fees and costs it had incurred in the *Cabrera* Action for the defense of uncovered claims.

60. Accordingly, Scottsdale is entitled to reimbursement, restitution and recovery from Defendants for those defense expenses in an amount to be proven at the time of trial.

## SIXTH CLAIM FOR RELIEF

(Reimbursement of Indemnity Payments – *Cabrera* Action)

(Against JS Union)

61. Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though full set forth herein.

62. Scottsdale defended Defendants in the *Cabrera* Action pursuant to a full reservation of rights, including, but not limited to, the right to recover from them indemnity

payments made by Scottsdale for non-covered claims asserted against them in the *Cabrera* Action, pursuant to the California Supreme Court decision in *MV Transportation*, 36 Cal.4th 643.

63. Because some of the claims asserted against Defendants in the *Cabrera* Action were not covered under the Scottsdale Policies, and because Scottsdale has no obligation to indemnify them for these claims, Scottsdale has been damaged in the amount of the indemnity payments totaling $316,213 in the *Cabrera* Action for uncovered claims.

64. Accordingly, Scottsdale is entitled to reimbursement, restitution and recovery from Defendants for these indemnity expenses.

## PRAYER FOR RELIEF

WHEREFORE, Scottsdale prays for relief as follows:

1. On its First Claim for Relief, for a judicial declaration that Scottsdale had no duty to indemnify Defendants for trebled damages in the Underlying Actions;

2. On its Second Claim for Relief, for a judicial declaration that Scottsdale had no duty to indemnify Defendants for damages sought in the *Perez* Action, based on the Lead Contamination Exclusion in the Scottsdale Policies;

3. On its Third Claim for Relief, for reimbursement from Defendants for defense fees and costs Scottsdale incurred in the *Perez* Action for the defense of uncovered claims, in an amount to be proven at trial;

4. On its Fourth Claim for Relief, for reimbursement from Defendants for indemnity expenses made in the *Perez* Action with respect to uncovered claims, specifically $103,005 (treble damages) and $740,110 (lead contamination), plus interest;

5. On its Fifth Claim for Relief, for reimbursement from JS Union for defense fees and costs Scottsdale incurred in the *Cabrera* Action for the defense of uncovered claims, in an amount to be proven at trial;

6. On its Sixth Claim for Relief, for reimbursement from JS Union for indemnity expenses made in the *Cabrera* Action for uncovered claims, specifically $316,213 (treble

14
COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT

1 | damages), plus interest;
2 |     7.    For costs of suit, including attorneys' fees herein incurred; and
3 |     8.    For all other and further relief as the court may deem just and proper.
4 | DATED: August 21, 2020        SELMAN BREITMAN LLP

By:   /s/ *Linda Wendell Hsu*
      LINDA WENDELL HSU
      KRISTINA FRETWELL
      Attorneys for Plaintiff SCOTTSDALE INSURANCE COMPANY

380 44811 4817-9682-1191 .v4